# Becker *v.* Hershey Transit Company, Appellant.

*Negligence—Automobiles—Collision with trolley car—Damages —Case for jury.*

In an action of trespass to recover damages for injuries, sustained in a collision between an automobile and trolley car at the intersection of two streets, it appeared that the plaintiff had stopped at the crossing, but that his view had been partially obstructed by other vehicles standing in the highway: that he had listened, and then proceeded forward with his automobile in low gear, looking as he went, and while doing so, was struck by a car of the defendant company, which ran forward eighty (80) yards before it was stopped.

*Held:* That the question of contributory negligence was for a jury, and that the verdict will be sustained.

Argued March 15, 1923. Appeal, No. 4, March T., 1923, by defendant, from judgment of C. P. Dauphin

Statement of Facts—Opinion of the Court. [81 Pa. Superior Ct.
County, June T., 1919, No. 574, on verdict for plaintiff
in the case of Jacob N. Becker v. Hershey Transit Com-
pany, appellant.   Before ORLADY, P. J., PORTER, HEN-
DERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.
Affirmed.

Trespass to recover damages resulting from a collision
between automobile and trolley car.   Before HARGEST,
P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff in the sum of $805, and judgment
thereon.   Defendant appealed.

*Error assigned* was refusal of defendant's motion for
judgment n. o. v.

*F. Lyman Windolph,* and with him *E. M. Hershey* and
*John E. Snyder,* for appellant.

*Maurice R. Metzger,* for appellee.

OPINION BY LINN, J., April 16, 1923:
Charging plaintiff with contributory negligence, ap-
pellant asks judgment n. o. v.   The jury found plaintiff
was not negligent.   Was the court wrong in submitting
the question?

Plaintiff, unaccompanied, driving his automobile, col-
lided with defendant's street car at right angles on inter-
secting streets in the built-up parts of Hershey about
noon on a rainy, foggy day.   He was familiar with the
place.   As he drove up Cocoa Avenue, approaching the
William Penn Highway on which street cars operated, he
had on his left, the side from which the street car came,
a large building alongside which, in Cocoa Avenue, stood
a line of automobiles.   This building of course prevented
any view to his left on the William Penn Highway until
he reached the highway front of the building.   At this

point, on the street crossing for pedestrians, he stopped, but found his view obstructed by an automobile on his left on the Cocoa Avenue side, extending partly over the street crossing, and by a large covered wagon (about 6 feet high) standing in the William Penn Highway in front of the building and by a number of automobiles lined up in front of the building on the other side of the wagon.   From the front of the building the distance across the sidewalk, gutter, and driveway to the nearest rail on which the street car came, was about 19 feet, of which about nine feet were between the gutter and the rail.   The covered wagon, drawn by one horse, appears to have stood somewhat diagonally in that place, leaving only about three or four feet between its rear end and the rail.   The William Penn Highway sloped downwards on his left at a 3.9% grade.   His seat in the automobile placed him eight feet behind its extreme front.   From the point where he stopped, he had of course only a limited view in the William Penn Highway over the vehicle standing to his left; but neither seeing nor hearing anything, he proceeded toward the track in low gear.   The evidence is not definite as to the distance from the near rail to the point where he stopped—several dimensions being given—the trial judge in his opinion fixed the distance as "9 or 10 feet away from the track"; counsel for appellant stated it to be 27 feet to where plaintiff sat; plaintiff during cross-examination testified he stopped on the crossing "9 or 10 feet from the south rail"; he was seated therefore perhaps 18 feet from the rail when he stopped and made such observation as was then possible.   As he drove forward in low gear, he looked and listened and when his car reached a point about 1½ feet from the rail, he saw approaching, as he looked over the top of the covered wagon, the wheel on a trolley pole at the trolley wire "a little more than 50 feet" away; it was coming upgrade.   He stopped immediately and attempted to turn his front wheels to the right to avoid collision, but his left front wheel was struck by

the overhang of the street car. The street car came without warning and after striking him ran about 80 yards before it was stopped.

In these circumstances, can it be said the court should have ruled that plaintiff failed to comply with any definite legal standard of care? Or, was it the duty of the jury, under appropriate instruction, to find the facts and determine whether plaintiff exercised such care as the circumstances required? Appellant replies that when plaintiff found his view to the left obstructed, the law required him to stop his car, get out and go forward to a place from which he could see down the William Penn Highway past the rear of the obstructing wagon. It is said the track is straight for some distance in the direction from which the car came, but it does not appear how much of that distance could have been seen in the weather of that day.

We know of no rule supporting appellant's position. There are reported cases in which it is said circumstances may require the driver of a wagon to stop, get out and look, but this case is easily distinguishable. Appellant relies specially on Smathers v. Street Railway Co., 226 Pa. 212, quoting at length from page 215. That opinion states the rule for the driver of a team. The driver of a motor car is in a different class; if he be required to get out and go forward, time must elapse and conditions may change while he is getting back to his car and starting, whereas the driver of a team, without losing time after looking, may lead his team across a track, though even he is not bound in all circumstances to stop before crossing a street railway track; for in the Smathers case Mr. Justice ELKIN said at p. 215: "......if when he looks at the edge of the tracks his view is obstructed so that he cannot see it then becomes his duty to listen, and under some circumstances it may be his duty to stop as if when he looks and listens he still is in doubt about the location and movement of the car. If in any of these situations he fails in the performance of the duty re-

quired he is guilty of contributory negligence and cannot recover."

Plaintiff, at the distance he was above the ground had some vision down the highway, limited as he said, but he was vigilant, for over the wagon he saw the approaching trolley more than 50 feet off, and the jury may have concluded he saw it the moment it came within the range of his vision; he had stopped and listened only about seven feet back from the point where he finally saw the trolley wheel without hearing any car; he had looked and listened as he drove on and heard nothing; he was in no doubt "about the location and movement of the car" in the sense of Judge Elkin's opinion; if, as he went forward, he had heard an approaching car he could not see, or had seen one and was in doubt whether it was in motion or concerning the speed of its approach, that language might be applicable.    In the Smathers case it appeared that a man drove to the track looking for a car but without seeing any "until the head of the horse had reached the tracks.  As he looked he then saw for the first time the car rapidly approaching over an elevation in the street which obstructed a further view from the crossing.  The car was running at an excessive rate of speed through the borough and seeing his danger he immediately turned the head of the horse and attempted to drive alongside of the track so as to avoid the collision.  He was too late, and received the injuries from which death resulted.  Neither the horse nor the buggy was on the track at the time of the accident, but the front wheel was close enough to be caught by the overhang of the car.  Certainly under these circumstances it was at least for the jury to say whether he was guilty of contributory negligence."

The extent to which the obstructions in the case at bar obscured plaintiff's view, as related to the exercise of care in the circumstances, is essentially a matter to be determined by the jury and not by the court.

Judgment affirmed.